**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|                                    |       |              |
|------------------------------------|-------|--------------|
| PAMELA ALTMAN,                     | )     |              |
|                                    | )     |              |
|     Plaintiff, | )     |              |
|                                    | )     |              |
|   v.                     | )     | 06-CV-771-WDS |
|                                    | )     |              |
| DEPARTMENT OF CHILDREN AND         | )     |              |
| FAMILY SERVICES, KARENA GLEASON,   | )     |              |
| NELSON ADAMS, BILL PEYTON, AND     | )     |              |
| PETE WESSEL,                       | )     |              |
|                                    | )     |              |
|     Defendants. | )    |              |
|                                    | )     |              |

**<u>MEMORANDUM & ORDER</u>**

**STIEHL, District Judge:**

Before the Court are several dispositive motions.  Defendants Karena Gleason,  Nelson Adams, Bill Peyton and Pete Wessel filed a motion for summary judgment (Doc. 46). Defendant Department of Children and Family Services (DCFS) filed a separate motion for summary judgment (Doc. 52).  Plaintiff has filed a lengthy response to these motions with some 27 exhibits comprising 127 pages (Doc. 63) and a supplement to the response as to the motion filed by DCFS (Doc. 67), which includes 18 more exhibits and 174 pages. Defendants have filed replies at Docs. 74 and 75.

Plaintiff has her own motion for partial summary judgment with respect to Count V (Doc. 48), to which defendants have filed a joint response (Doc. 58).

The parties have filed opposing motions to strike (Docs. 77 and 80), and defendant DCFS has filed a supplement to its motion for summary judgment, raising the issue of collateral estoppel (Doc. 94).  In response to the supplement, plaintiff has filed her own motion for

collateral estoppel (Doc. 101), to which defendants have filed a joint reply (Doc. 104).

## BACKGROUND

Plaintiff, who is a black female, was an employee of the Illinois Department of Children and Family Services at all times related to the complaint.  The record reveals that plaintiff was a Child Protection Advanced Specialist, an investigator, with the Murphysboro field office of DCFS. Plaintiff filed a six count amended complaint (Doc. 35) alleging that the defendants discriminated against her on the basis of race and disability, and alleging intentional infliction of emotional distress by defendants Gleason and Adams.  Specifically, plaintiff alleges that from December, 2003 through November, 2007, she was subject to race discrimination and retaliation by her direct supervisor, Gleason, by Gleason's supervisor, Adams, by the Regional Administrator, Peyton, and by Wessel, who was the Labor Relations Specialist for the Southern Division.

Count I alleges disparate treatment and racial discrimination in violation of the Fourteenth Amendment and § 1981 against all defendants; Count II alleges hostile work environment in violation of the Fourteenth Amendment and § 1981 against all defendants; Count III alleges disability discrimination under the ADA against defendants Gibson, Adams, and DCFS; Count IV alleges that defendant DCFS engaged in FEMA leave interference; Count V alleges defendants Gleason, Adams, and DCFS retaliated against plaintiff for filing this action, all in violation of the ADA, and §§ 1981 and 1983; and Count VI alleges intentional infliction of emotional distress against Gleason and Adams which allegedly caused her to take leave from April, 2006 thru January, 2007.

Specifically, the Amended Complaint alleges that the plaintiff was the only black

investigator on her "team" from 2003 until 2005. That in 2005 she was evaluated as having work

deficiencies, including spelling and grammar errors, and that after she came under the

supervision of defendant Gleason, plaintiff was selectively assigned to cases in poor, black

neighborhoods which the white investigators did not want.  Plaintiff alleges that she objected to

this selective assignment, but that her complaints were to no avail, and she was repeatedly

harassed. She charges that defendants Adams and Gleason began a campaign to make false

disciplinary complaints against plaintiff, with the goal of forcing her to resign or to establish a

basis for firing her.  Plaintiff alleges that despite an existing policy for "progressive disciplinary"

action, plaintiff was not afforded the appropriate protection of that policy and was subject to

sham hearings. Plaintiff further alleges that she had a medically certified disability, the result of

a childhood trauma, which led to an auditory processing impairment. She asserts that this

impairment resulted in trouble with grammar and spelling and hearing within a group. She

alleges that she requested reasonable accommodations for her disability, which were denied by

defendants.  Finally, she avers that she was terminated in retaliation for the filing of her ADA

claims and this claim.[1]

     The record reveals that plaintiff's discharge by DCFS was based upon falsification of

records.[2] Plaintiff filed an action with the Civil Service Commission appealing the decision of

the DCFS to fire her.  The Administrative Law Judge, determined that the first falsification

---

[1]There is some confusion in the record as to the date of her discharge.  At times it is referred to as a November 2006 discharge, in other places in the pleadings to November, 2007.  It appears that the correct date is 2007, and the Court will proceed with that date for purposes of these motions.

[2]DCFS brought charges against plaintiff for falsification of document charges in case notes (in the Lynn Child Abuse Case Investigation) and, additionally, brought four negligence charges: negligently failing, in the Lynn abuse case,  to interview the children; negligently failing to obtain a sex abuse exam; negligently failing to do drug screening of the parent; and, an unrelated claim of negligence for falling asleep while interviewing another client (Ms. Thompson).

charge (that she asked a Ms. Lynn for permission to interview the younger siblings of the victim, but that Ms. Lynn refused that request) was supported by evidence and gave a basis for her firing.

## DISCUSSION

### I.      Cross Motions to Strike

The parties each seek to strike matters in the file related to the various motions for summary judgment, therefore, the Court will address these motion before turning to the dispositive motions.   Initially, defendants jointly moved to strike much of plaintiff's affidavit, on the grounds that it contains argument and opinion and is rife with immaterial matters; that it contains matters on which plaintiff is not competent to testify; includes hearsay; and includes matters without a foundation. Defendants have filed a response (Doc. 75) which details the specifics of their objections to the plaintiff's affidavit, exhibits and documents.  In response to the defendants' motion to strike, plaintiff has filed a motion of her own seeking to strike defendants' motion to strike (See motion at Doc. 80).

This exchange of motions is indicative of the manner in which this litigation has proceeded.  The parties have taken every opportunity to over-paper the Court's file with lengthy exhibits, irrelevant materials and other documents that, frankly, only muddy the waters with respect to the resolution of the issues before the Court.  Plaintiff seeks to strike the defendants' motion to strike on the grounds that it is too long.  Although the Court does have rules limiting memoranda of law, and requires parties to seek leave to file memoranda that exceed that length, defendants' motion to strike does not fall within that restriction.  It seems, also, rather obviously, that the defendants *would not* have been placed in the position of filing a 56 page motion to

4

strike if plaintiff had not seen fit to file questionable, lengthy exhibits in support of her response to the motions for summary judgment. Therefore, the Court **DENIES** plaintiff's motion to strike defendants' motion to strike (Doc. 80). Plaintiff has not directly replied to the motion to strike (stating that it would require some 150 ***more*** pages of pleadings for plaintiff to adequately respond to the defendants' motion to strike).

This Court is well aware of the standards which apply, under Fed. R. Civ. P. 56, to affidavits. When filing or responding to summary judgment motions, the parties often submit affidavits to support their relative positions. Plaintiff, as the non-moving party, must do more than simply rest on her pleadings to defeat summary judgment, she must set forth a genuine issue of material fact which requires trial. It is well settled that "to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Keri v. Barod of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006), (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586(1986); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992)). It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Keri* 458 F.3d at 628 (*citing Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir.1997)).

Keeping in mind the legal standards governing summary judgment motions, the responses to the motions and any exhibits and affidavits to any of these pleadings, the Court declines to engage in a line-by-line, detailed ruling on defendants' motion to strike. The Court **DENIES** defendants' motion to strike (Doc. 77), but notes that it will not consider improper

pleadings in support of the motions or responses. The Court also **DENIES** plaintiff's second motion for extension of time to file response to the defendants' motion to strike as moot (Doc. 81).

## II.    Pending Summary Judgment Motions

Defendants seek summary judgment on all claims.  Plaintiff seeks partial summary judgment on Count V (the retaliation claim).  A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *see also Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

6

Although the parties disagree on many of the facts which underlie this cause of action, the record reveals that plaintiff claims in her affidavit that she is a disabled veteran with a 10% disability which includes auditory processing, and problems with reading and grammar.[3] Plaintiff was employed by DCFS in 2000 in its Belleville office, and, while there, was allowed to use a tape recorder for training sessions, team and staff meetings. She transferred to the Murphysboro office of DCFS in 2003. During the first year and a half in the Murphysboro office, she did not seek the use of any accommodations for her disability. At various times in plaintiff's employment with DCFS she was evaluated as having trouble with spelling and grammar. In 2003 these issues were noted, but as part of the evaluation, it was noted that plaintiff, with the help of a computer system, improved the quality of her documentation, and had the ability to be a "competent and effective investigator." (Doc. 63, ex D). Plaintiff was supervised by defendant Gleason beginning in December of 2003. The first evaluation by Gleason does not mention any problems with plaintiff's grammar and spelling. (*Id*. ex. E).

Plaintiff was first negatively evaluated by defendant Gleason in 2004 for grammar and spelling. Plaintiff then asked for a proofreader and to use a tape recorder, and Gleason gave plaintiff a "Supervisor's Note" stating that she, Gleason, would proofread plaintiff's work. In August of 2004 plaintiff received a suspension for poor work performance. It is agreed by the parties that at this time DCFS was understaffed. Plaintiff asserts that other workers made errors, similar to those she was making.[4]

---

[3]The primary support for this is found in plaintiff's affidavit, to which defendants object. However, there is some additional evidence in the record of plaintiff's inability to process, spell, some reading difficulties and an inability to hear in large groups.

[4]Defendants sought to strike this part of plaintiff's affidavit, however, to the extent that it is based on personal knowledge, the Court will allow and consider this averment.

Defendant DCFS has recently filed a supplement asserting that plaintiff is collaterally estopped from raising her claims against DCFS as a result of the ruling by the Sangamon County Circuit Court in *Altman v. State of Illinois Civil Service Commission and Illinois DCFS*, No. 09-MR-28, which affirmed the decision of the administrative law judge for the Civil Service Commission finding that plaintiff's discharge was proper because plaintiff falsely documented notes in a client file which was good cause for discipline, including termination. (Doc. 94, exhibits 35 & 36). The Circuit Court determined that DCFS had legitimate grounds for taking the adverse employment action. DCFS asserts that plaintiff cannot, based upon the principles of collateral estoppel, now claim that any action was based on discriminatory animus. Plaintiff, in turn, seeks collateral estoppel against defendants to prevent them from challenging the findings of the ALJ. The Court will address the collateral estoppel motions before turning to the other motions for summary judgment.

### A.    Claim Preclusion/Collateral Estoppel

The doctrine of claim preclusion (collateral estoppel) provides that a prior determination involving the same parties and same issues bars a later action. *Cole v. Board of Trustees,* 497 F.3d 770, 773 (7th Cir.2007). Collateral estoppel, also known as issue preclusion, bars a party from relitigating the same issue that was necessary to the findings in a prior final judgment. *Wash. Group Int'l., Inc. v. Bell, Boyd & Lloyd LLC,* 383 F.3d 633, 636 (7th Cir.2004). "[I]ssue preclusion applies only when (among other things) the same issue is involved in the two proceedings and the determination of that question is 'essential' to the prior judgment." *King v. Burlington Northern & Santa Fe Ry. Co.* 538 F.3d 814, 818 (7th Cir. 2008).

To determine the collateral estoppel effect of a state court ruling in a later federal court

case, the district court is to apply Illinois' law of collateral estoppel. *See* 28 U.S.C. § 1738;  *In re Catt,* 368 F.3d 789, 790-91 (7th Cir.2004).  This Court must  give the same preclusive effect to a judgment of an Illinois court that another Illinois court would. *See* 28 U.S.C. § 1738; *Burke v. Johnston,* 452 F.3d 665, 669 (7th Cir.2006). Under Illinois law, collateral estoppel applies if "(1) the issue decided in the prior adjudication is identical to the issue presented in the present suit; (2) a final judgment was entered on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to or in privity with a party to the prior adjudication." *Gumma v. White,* 833 N.E.2d 834, 843 (Ill. 2005). In addition, under Illinois law (and federal law as well) a judicial finding will be given collateral estoppel effect only if reached after a full and fair hearing. *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.,* 361 F.3d 359, 363 (7th Cir. 2004).

Here, plaintiff acknowledges that this Court must give full faith and credit to the findings of the Commission to the extent that the parties had the ability to fully litigate the underlying issues.  Plaintiff, therefore, concedes that the ALJ's decision that the false statement in her notes with respect to the Lynn decision bars her from disputing that DCFS had sufficient grounds to fire her.

### B.    Retaliation Standards

In order to establish retaliation, plaintiff may proceed under either the direct or indirect methods.  "Under the direct method of proving retaliation, a plaintiff must present evidence of a statutorily protected activity, a materially adverse action taken by the employer, and a causal connection between the two." *Daugherty v. Wabash Center, Inc*. 2009 WL 2477640 (7th Cir. August 14, 2009 ); *see also, <u>Caskey v. Colgate-Palmolive Co.,</u>* 535 F.3d 585, 593 (7th

Cir.), *cert. denied,* 129 S.Ct. 738 (2008).  Therefore, to make her case under the direct method, plaintiff must show a causal connection between any protected conduct and her termination. Plaintiff has not established proof under the direct method of engaging in some protected activity which resulted in her termination. Therefore, her claim for direct proof of retaliation is unsupported.

To establish a *prima facie* case under the indirect method, plaintiff must present evidence showing, among other things, that a similarly situated employee who did not engage in protected activity received more favorable treatment.  *Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 850 (7th Cir.2008).  Again, plaintiff has failed to establish retaliation under this method of proof, because she has not established that a similarly situated employee, i.e. one who was been found to have falsified records, received more favorable treatment and was not terminated.

Plaintiff seeks to apply collateral estoppel to prevent the defendants from arguing contrary to the findings of fact and conclusions of law of the ALJ.  The principles of Illinois law apply, as well, to this collateral estoppel claim.[5]  However, now plaintiff is, essentially, attempting to employ the "offensive" use of collateral estoppel.  This occurs when the plaintiff, "seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully." *Preferred Personnel Serv., Inc. v. Meltzer, Purtill and Stelle, LLC.,* 902 N.E.2d 146, 156 (Ill App. Ct. 2009).  Further, "There must have been the incentive and opportunity to litigate, so that a failure to litigate the issue is in fact a concession on that issue." *Talarico v. Dunlap,* 685 N.E.2d 325, 328 (Ill. 1997).

---

[5] Again, to be entitled to the application of this doctrine, plaintiff must show that:  "(1) the issue decided in the prior adjudication is identical to the issue presented in the present suit; (2) a final judgment was entered on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to or in privity with a party to the prior adjudication." *Gumma,* 833 N.E.2d at 843.

> Illinois courts have cautioned against offensive use of collateral estoppel because, as noted by our supreme court, it does not always foster judicial economy and fairness in the way that defensive use of collateral estoppel typically does, instead perhaps providing an incentive to adopt a " 'wait and see' " attitude, in the hope that the first action by another plaintiff will result in a favorable judgment.

*Preferred Personnel Serv.*, 902 N.E.2d at 946. This is precisely the manner in which plaintiff seeks to apply collateral estoppel to the defendants in this case. Notably, the individual defendants were not parties to the Civil Service Commission action, and therefore collateral estoppel would simply not apply to them. In addition, the plaintiff has failed to establish that the ALJ's findings have preclusive effect against DCFS in this case. This is especially true in light of the fact that the ALJ found that the other two charges in the Lynn case and the negligence charges were not essential to a final determination, as the first ground supported the disciplinary action against the plaintiff. Therefore, the ALJ did not make final findings on the validity of those charges and claim preclusion would not apply.

Accordingly, the Court **DENIES** plaintiff's counter-motion for collateral estoppel (Doc. 104). The Court **FINDS** that in light of plaintiff's admission that the ALJ's determination with respect to her termination is entitled to full faith and credit in this Court, together with the plaintiff's failure to otherwise establish retaliation under either the direct or indirect method, as discussed above, the Court **FURTHER FINDS** that it is appropriate to grant summary judgment, based on claim preclusion, on plaintiff's claim of retaliatory discharge (Count V), and **GRANTS** summary judgment in favor of all defendants and against plaintiff on Count V of her amended complaint (Motions at Docs. 46 & 52). The Court, accordingly, **DENIES** plaintiff's motion for partial summary judgment on Count V of the amended complaint on all grounds raised (Doc. 48).

<u>**C.**</u>   **Defendants' Motions for Summary Judgment (Docs 46 & 52)**

Defendants seek summary judgment on several grounds. Because the motions raise similar grounds, the Court will address them collectively.

**1.   The Sections 1981 and 1983 Racial Discrimination, Hostile Work Environment Claims and ADA Discrimination(Counts I -III).**

The individual defendants and DCFS all seek summary judgment on the claim of race discrimination and hostile work environment.   Initially, the individual defendants assert that the § 1983 claims against them in their official capacities are barred by the Eleventh Amendment. DCFS is part of the State of Illinois, *see, eg. Omosegbon v. Wells,* 335 F.3d 668, 672 (7th Cir.2003), and thus the Eleventh Amendment protects the individual defendants (all sued in their official capacities) from satisfying a money judgment. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").   Furthermore, it is well settled that "[A] State is not a 'person' against whom a § 1983 claim for money damages might be asserted."*Lapides v. Bd. of Regents,* 535 U.S. 613, 617 (2002) ; *see Doe v. Heck,* 327 F.3d 492, 508 n. 13 (7th Cir.2003) (holding:  "To the extent the plaintiffs' suit against the defendants in their official capacities with the Bureau [of Milwaukee Child Welfare] seeks retrospective monetary damages, this action constitutes a suit against the state that is prohibited by the Eleventh Amendment.").   Accordingly, the Court **FINDS** that defendants' motion for summary judgment on the claims for official capacity liability in Counts I-III under § 1983 is well taken.

Also, plaintiff's claims against the individual defendants for liability under § 1983 in

12

Counts I and II in their individual capacities cannot stand.  It is well settled that claims of retaliation "arise under the Equal Protection Clause." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2006).  However, "[t]hat clause does not establish a general right to be free from retaliation." *Id.* A right to be free from retaliation for protesting either harassment or discrimination is a right that rests in Title VII, not in the Equal Protection Clause.  *Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir. 1989).  Therefore, plaintiff's claims against the individual defendants, in their individual capacities under § 1983 are also subject to summary judgment.

The individual defendants further assert that the Eleventh Amendment bars claims brought against them under § 1981 based upon sovereign immunity.    This is a well established principle, that neither the state, nor its employees are subject to suit under § 1981 in their official capacities.  *Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 776 (7th Cir. 1999); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-71 (1989).

Plaintiff may seek damages from individual defendants in their individual capacities under § 1981 if they are shown to have been personally involved in any improper conduct.  If, however, the claim is really one against the State, without respect to the labels given by the complaint to the action, then that claim is also barred by the Eleventh Amendment against the individual defendants.  "[I]f the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment woudl be to restrain the Government from acting, or to compel it to act," *Luder v. Endicott,* 253 F.3d 1020, 1023 (7th Cir. 2001), then the action is barred. Plaintiff seeks new supervisors and reversal of discriminatory action, therefore, that relief is only available from the state, and no real relief is sought against the individual defendants, and they are entitled to summary judgment on

13

plaintiff's claims brought under § 1981 in Counts I and II.

In addition, the plaintiff's claims in Count III against the individual defendants are subject to summary judgment as well.  To establish a violation of the ADA, an employee must show: "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Stevens v. Ill. Dep't of Transp.,* 210 F.3d 732, 736 (7th Cir.2000) (citations omitted); (*cited in Winsley v. Cook Co.*, 563 F.3d 598, 603 (7th Cir. 2009)).  However, plaintiff's claims against the individual defendants must fail because the Act only provides for suits against public entitles. S*ee* 42 U.S.C. §§ 12131-12133; *United States v. Georgia,* 546 U.S. 151, 154 (2006); *Walker v. Snyder,* 213 F.3d 344, 346 (7th Cir. 2000).

The Court, therefore,  **GRANTS** summary judgment in favor of defendants, Karena Gleason, Nelson Adams, Bill Peyton and Pete Wessle, on all claims brought in Counts I, II and III of the Amended Complaint. and II by plaintiff against the individual under § 1983 in their official and individual capacities.

### 2.     Claims for Intentional Infliction of Emotional Distress

Plaintiff seeks, in Count VI, damages for intentional infliction of emotional distress against defendants Gleason and Adams.  Defendants assert that they are entitled to summary judgment on this claim as it is barred by sovereign immunity. A claim that is only tangentially brought against a state employee is really one against the state *see, Management Ass's of Ill., Inc. v. Bd. of Regents*, 618 N.E.2d 694, 706-07 (Ill. App. Ct. 1993).  The Seventh Circuit held in *Bremen State Bank v. Hartford Accident & Indemnity Co, .*427 F.2d 425, 428  (7th Cir.1970)

14

> Our reading of the [Illinois] cases leads us to conclude that
> the rule in Illinois is that the employer is liable for the
> negligent, wilful, malicious or criminal acts of its employees
> when such acts are committed during the course of
> employment and in furtherance of the business of the
> employer; but when the act is committed solely for the
> benefit of the employee, the employer is not liable to the
> injured third party.

*See also, Nikelly v. Stubing*, 562 N.E.2d 360, 364-65 (Ill. App. 3d 1990) (where the court held

that when the intentional infliction of emotional distress by his supervisor was alleged to have

been made with the intent to coerce the plaintiff to retire, the supervisor's acts were within the

scope of his authority because there were no facts alleged which showed *personal* animosity.

Thus, the action was one against the State.)  Similarly here, the plaintiff has not alleged, nor

shown, that the individual defendants in any way personally benefitted from the alleged acts.

Therefore, the Court concludes that the claims of intentional infliction of emotional distress are

actually properly brought only against DCFS, and the individual defendants Gleason and Adams

are entitled to summary judgment on Count VI. Accordingly, the Court **GRANTS** defendants

Gleason and Adam's motion for summary judgment on all claims raised in Count VI.

### 3.     Remaining Claims against DCFS

DCFS asserts that it is entitled to summary judgment on plaintiff's claims for hostile

work environment and racial discrimination because she cannot establish either of these claims.

The Seventh Circuit recognizes that the proof necessary to establish discrimination under 42

U.S.C. §§ 1981 and 1983 are essentially the same as that required under Title VII.  *Williams v.

Seniff,* 342 F.3d 774, 788 (7th Cir. 2003); *Malacara v. City of Madison,* 224 F.3d 727, 729 (7th

Cir. 2000).  Plaintiff can only prevail on her equal protection claim by offering direct proof of

discriminatory intent, or she may prove discriminatory intent by circumstantial evidence.

15

In an employment situation, the latter approach is usually accomplished through the use of the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[P]laintiff first must establish by a preponderance of the evidence a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated against the plaintiff." *Helland v. South Bend Cmty. Sch. Corp.*, 93 F.3d 327, 329 (7th Cir. 1996). Once the plaintiff has established a prima facie case, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the action that is alleged by the plaintiff to have been discriminatory. *See Helland*, 93 F.3d at 329. Then, the burden shifts back to the plaintiff, because, if the employer has met its burden of production, the plaintiff then must establish by a preponderance of the evidence that the proffered reasons for the alleged discriminatory action were pretextual. *See Bruno v. City of Crown Point*, 950 F.2d 355, 363 (7th Cir.1991) (*citing Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

In most cases in an employment situation, the plaintiff does not attempt to make out a case of discriminatory intent by reliance on direct evidence. Rather, she attempts to show, through circumstantial evidence, that discrimination and a hostile work environment existed. To establish an equal protection violation, plaintiff must show that (1) she is a member of a protected class, (2) she is similarly situated with members of the unprotected class, (3) she suffered an adverse employment action, and (4) she was treated differently from members of the protected class. Some cases add a fifth element: that the defendant acted with discriminatory intent, but this has been recognized as a "redundancy" *Seniff*, 342 F.3d at 788, (*citing McPhaul v. Bd. of Comm'rs of Madison Co.,* 226 F.3d 558, 564 (7th Cir. 2000); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)).

16

Plaintiff's proof is basically circumstantial. She alleges a pattern of acts of discrimination which occurred for several years, creating a hostile work environment based on race.  To establish hostile work environment, plaintiff must meet both an objective and subjective test. She must show that (1) the work environment was both objectively and subjectively offensive; (2) that any harassment was based upon, in this case, her race; (3) that the conduct was severe or pervasive, and (4) that there is a legitimate basis for employer liability.  *Cerros v. Steel Techs, Inc.* 288 F.3d 1040, 1045 (7th Cir. 2002).  Here, plaintiff has minimally established that there was a pattern and practice of racial discrimination amounting to a hostile work environment. There is no dispute that plaintiff is a member of a protected class.

Although the evidence is slight, plaintiff has established that she received adverse employment actions (i.e. being treated differently from other investigators by being given less desired cases which were located in "the projects"; being given cases that were more than an hour's drive, particularly when the references were made late on a Friday; being given cases involving black males because other investigators were afraid to take those cases, and suspensions as a result of disciplinary actions).  An adverse employment action is a "quantitative or qualitative change in the terms or conditions of employment."  *Hilt Dyson v. City of Chicago*, 282 F.3d 456, 465 (7the Cir. 2002).  This must be "materially adverse" *Id.*

Plaintiff has also, arguably, established that she was meeting the Department's expectations because she received at least satisfactory, if not stellar, evaluations after she transferred to the Murphysboro office in 2003 through the evaluation period of December, 2004. Plaintiff alleges, and can attempt to establish more fully at trial, that there were attempts by the defendants to establish unfounded disciplinary acts against her starting in 2005.

17

The Court notes, however, that in light of its prior ruling that collateral estoppel applies with respect to the disciplinary charges that led to her discharge, plaintiff's evidence will be limited at trial in accordance with the Court's ruling.  The Court, therefore, **DENIES** the motion for summary judgment by DCFS on plaintiff's claims of violations of §§ 1981 and 1983 based upon hostile work environment and race discrimination, as set forth above.

### 4.        ADA[6] and FMLA Claims

Finally, defendant DCFS seeks judgment on plaintiff's claims that the defendant acted in violation of the Americans with Disability Act and the Family and Medical Leave Act.  Count III seeks recovery for disability discrimination under the ADA, Count IV for Interference with FMLA leave.  The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a); *Furnish v. SVI Sys., Inc.,* 270 F.3d 445, 448 (7th Cir.2001). To prevail on an ADA claim, the plaintiff must show "(1)[s]he is 'disabled'; (2) [s]he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability." *Furnish,* 270 F.3d at 448. The ADA defines "disability" as follows:

> The term "disability" means, with respect to an individual-
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

"[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton*

---

[6]The Court has previously granted judgment on the claims in Count V claiming retaliation in violation of § 1981, § 1983 and the ADA based upon collateral estoppel, therefore the Court need not address the viability of any remaining ADA claims in that count.

*v. United Air Lines, Inc.,* 527 U.S. 471, 483(1999). The statute requires the disability issue to be determined by reference to "an individual" and this Court must determine whether a given physical or mental impairment "substantially limits" the "major life activities of such individual." *Id.*; *see also* § 12102(2)(A). Major life activities include, but are not limited to, "functions such as caring for [one's self], performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

In order to establish a prima facie case of discrimination under the indirect method of proof, plaintiff must show: "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he was meeting [her] employer's legitimate employment expectations; (3) [s]he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment." *Rooney v. Koch Air,* 410 F.3d 376, 380-81 (7th Cir.2005). *See Squibb v. Mem. Med. Ctr.,* 497 F.3d 775, 788 (7th Cir.2007) (in an ADA retaliation claim under the indirect method, "we must examine [the plaintiff's] performance at the time of the challenged adverse actions"); *see also Timmons v. General Motors Corp.,* 469 F.3d 1122, 1127-28 (7th Cir.2006) (an ADA disparate treatment claim can be established under the indirect method).

The defendant asserts that the plaintiff's disability (reading, spelling and auditory) did not  substantially limit a major life activity and therefore falls below the ADA definition of disability. The Supreme Court has produced a three-part test to determine if a physical or mental condition met subsection (A) of the definition of disability. *Bradgon v. Abbott,* 524 U.S. 624 (1998). First, the Court must determine if the condition claimed is a physical or mental impairment. *Bragdon,* 524 U.S. at 631. Second, the Court must identify the life activity on which respondent relies and determine whether it constitutes a major life activity under the ADA. *Id.*

19

Finally, the Court will ask whether the impairment substantially limits the major life activity. *Id.*

Plaintiff has shown that, at least before being employed at Murphysboro, she had been given accommodations for her alleged disability. She also has established that this alleged disability affects her ability to work, which falls within the ADA definition. The plaintiff has, therefore, sufficiently alleged a disability affecting a major life activity under the ADA. DCFS asserts that the plaintiff did not adequately establish that she has a processing disorder because she did not follow up a 1999 assessment with suggested neurological testing. This, however, goes to the weight of her claim, not to its viability. The Court **FINDS,** therefore, that for purposes of summary judgment, plaintiff can proceed with her claim of ADA discrimination against DCFS only.

Finally, to prevail on a FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (*citing Hoge v. Honda Am. Mfg., Inc*, 384 F.3d 238, 244 (7th Cir. 2004)). Plaintiff must establish that: "(1) [s]he was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4)[s]he provided sufficient notice of [her] intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [s]he was entitled." 472 F.3d at 477.

Here, plaintiff has claimed that she took medical leave from April, 2006 through January, 2007, some 38 weeks. Under the FMLA, plaintiff is entitled to 12 weeks' leave. *See* 29 U.S.C. § 2611(2)(A) (detailing the FMLA's years- and hours-in-service eligibility requirements); *id.* § 2611(4) (defining which employers are subject to the FMLA's provisions). Clearly, the FMLA makes it unlawful for an employer to interfere with an employee's attempt to exercise any FMLA

rights,  *Id.* § 2615(a)(1), and also forbids an employer from retaliating against an employee who exercises FMLA rights. *See id.* § 2615(a)(2) (prohibiting discrimination against an individual who opposes practices made unlawful by the FMLA); *id.* § 2615(b) (prohibiting discrimination against persons who participate in or institute FMLA proceedings or inquiries).

Plaintiff asserts that she was placed on "semi-paid" status, and defendant asserts that this did not amount to a violation of the FMLA.   Plaintiff asserts, however, that the defendant took plaintiff off FMLA leave in May of 2006 so that they could suspend her for 15 days.  This action, if proven, could arguably rise to the level of an FMLA violation. The FMLA therefore contemplates the interference and retaliation theories of recovery, and defendant's motion for summary judgment on this claim is **DENIED**. *See Hoge*, 384 F.3d at 244.

## CONCLUSION

Accordingly, the Court **GRANTS** the individual defendants' motion for summary judgment (Doc. 46) and judgment is entered in favor of the individual defendants Karena Gleason, Nelson Adams, Bill Peyton and Pete Wessle, and against plaintiff Pamela Altman on all claims brought against them in Counts 1-III, V, and VI of the Amended Complaint.

The Court **GRANTS in part** and **DENIES in part** defendant DCFS' motion for summary judgment (Doc. 52).  The Court **GRANTS** the motion as to plaintiff's claim of retaliation in Count V, on the grounds that collateral estoppel precludes those claims, and judgment is entered in favor of defendant DCFS and against plaintiff, Pamela Altman on all claims raised in Count V of the Amended Complaint. The Court **DENIES** the remainder of DCFS's motion for summary judgment.

The Court **DENIES** plaintiff's motion for summary judgment on Count V (Doc. 48).

21

The Court **DENIES** defendants' motion to strike (Doc. 77) and **DENIES** plaintiff's cross-motion to strike (Doc. 80).  Plaintiff's second motion for extension of time to file response (Doc. 81) to defendant's motion to strike is **DENIED** as moot.  Plaintiff's motion for collateral estoppel (Doc. 101) is **DENIED.**

The only remaining defendant in this action is DCFS and the only remaining claims are those raised in Counts 1-IV.


**IT IS SO ORDERED.**

**DATE   28  September, 2009**

        **s/ WILLIAM D. STIEHL**
          **DISTRICT JUDGE**