IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAMELA ALTMAN,              )  | |
|                             )  | |
|     Plaintiff,              )  | |
|                             )  | |
| v.                          )  | 06-CV-771-WDS |
|                             )  | |
| DEPARTMENT OF CHILDREN AND  )  | |
| FAMILY SERVICES, KARENA GLEASON, ) | |
| NELSON ADAMS, BILL PEYTON, AND )  | |
| PETE WESSEL,                )  | |
|                             )  | |
|     Defendants.             )  | |
|                             )  | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion for judgment at the close of the plaintiff's case (Doc. 137) pursuant to Fed. R. Civ. P. 50(a). The Court heard oral argument on the motion and granted it as to Counts I and IV, only. The standard for granting a Rule 50 motion is, "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support a jury's verdict of race discrimination." *Davis v. Wisc. Dept. Of Corrections,* 445 F.3d 971, 975 (7th Cir. 2006).

**I.      COUNT I: RACE DISCRIMINATION**

Count I of plaintiff's Amended Complaint seeks damages for alleged violations of Title VII against the defendant, the Department of Children and Family Services related to her three suspensions of 3, 7 and 15 days. To succeed on a claim of race discrimination, the plaintiff must establish that she suffered intentional discrimination because of her race. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). Further, she must offer evidence sufficient to "pave a

rational path to the jury's finding of intentional discrimination." *Id.* at 976.  Plaintiff can make this showing under the *McDonnell Douglas* test by the direct or indirect method of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Here, plaintiff asserts that the discipline she received, three, seven and fifteen day suspensions was motivated by racial animus. The evidence reveals that the plaintiff received the three day suspension for conduct unbecoming, and neglect of responsibility (failure to be "on-call" as scheduled). Plaintiff has admitted that she made a mistake with respect to the "on-call" charge when she mis-calendared her schedule and missed her call for that day.

      The Seven (7) day suspension (Pl. Ex. 30)was for failing to document exculpatory evidence failing to contact a critical witness, and failing to identify a OPWI (other person with information).  Plaintiff asserts that this suspension was really for her failure to meet a CAP (corrective action plan) with respect to errors of a grammatical nature in her reports.  The fifteen day suspension (Pl. Ex. 37) was for failing to follow a directive from a supervisor, and for providing false information to a supervisor.

      **A.**    **Indirect Method of Proof**

      The Court previously determined that plaintiff had failed, by testimony and by offer of proof, to make a prima facie showing that, among other things, a comparable employee outside of her protected class received better treatment.  The Seventh Circuit has held that "similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects,' which includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 365-66 (7th Cir. 2009).  The *Patterson* court held that "this means that [the plaintiff] must identify a comparison employee who held the same job . . .

engaged in the same or comparable misconduct . . .did not hold her [same protected class status] and was treated more favorably." *Id.* at 366.   Further, "In the context of a disciplinary action, we normally rely on a showing that the employees engaged in similar conduct, were subject to the same performance standards, and dealt with the same supervisor." *Lampley v. Pollution Control Ind. of Am.,* 2009 WL 4023576 (7th Cir. 2009) (unpublished opinion) citing, *Perick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 688 (7th Cir. 2007).

"[T]he purpose of the test remains the same: to discern whether there are sufficient common factors between the plaintiff and another employee to allow for a meaningful comparison in order to divine whether discrimination was involved in an employment decision." *McGowan v. Deere & Co.*, 581 F.3d 575 579-80 (2009).

The Court has ruled that plaintiff did not sufficiently establish that her tendered evidence of treatment of other employees was "significantly similar" to warrant introduction of evidence based on indirect method of proof.  In this case, therefore, plaintiff must proceed under the direct method of proof to show racial discrimination, which she has failed to establish.

### B.   Direct Method of Proof

Plaintiff may prove intentional discrimination by either direct or circumstantial evidence. The first, inquiry, under the direct method, is to determine what was the defendant's asserted justification for the employment action and whether the employer's justification or reason for the action was pretextual.  To establish pretext plaintiff must show that: 1) The reason offered had no basis in fact; 2) That race actually motivated the adverse employment action; or, 3) That race was  insufficient to motivate the adverse employment action.  In this case, the Court finds that plaintiff's assertions of pretext are not supported by the record, and that the defendant's

justifications for the three suspensions were all based on work performance deficiencies.

With respect to the determination of pretext, the issue becomes can plaintiff show that she was actually subject to adverse employment action because of her race? In this case, the record reveals strong evidence of other non-discriminatory reasons for DCFS' decision to suspend her. With respect to the three day suspension, plaintiff used her office position to receive law enforcement information for personal reasons. This is not a race-based decision, but, rather, one based on her mis-use of her authority. Similarly with the seven day suspension, the Court recognizes that the suspension followed the CAP closely, but that fact alone does not make it racially motivated. First of all, to make the connection the plaintiff seeks between the CAP and the seven day suspension, the Court would have to find that the requirements of the CAP were racially  racially motivated. Not only has plaintiff not offered any evidence to support that claim, the witness Liz Boyland, who is white, testified that she too was subject to repeated editing of her reports, just like the plaintiff.

Therefore, the Court **FINDS** that plaintiff created only a weak issue of fact as to whether the employer's reason was untrue. Moreover, there is sufficient, independent evidence that no discrimination based on race occurred. Therefore, with respect to the seven day suspension, the court finds that plaintiff has failed to establish her case.

With respect to the fifteen day suspension, the Court **FINDS** that there is more than ample, unrebutted evidence that the suspension was soundly based on plaintiff's actions. She admitted at trial that she was directed to see a 12-year old child on a Friday, but that she failed to follow that directive. The evidence was that she was directed to see the child, but did not do so because she went to the hospital believing she was having a heart-attack. That belief was not

confirmed by her examination, and plaintiff did not timely report to her supervisor her current medical status, seek to have someone else make the call on the 12-year old, nor make the call that afternoon, herself.

## II.    COUNT IV – INTERFERENCE WITH FMLA CLAIMS

To prevail on her Family and Medical Leave Act (FMLA) interference claim, plaintiff must show that: (1) she was eligible for FMLA protection; (2) defendant was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) defendant denied her benefits to which she was entitled. *Simpson v. Office of the Chief Judge of the Cir. Ct. Of Will Co.,* 559 F.3d 706, 712 (7th Cir. 2009).

Under the FMLA, "eligible employees" are entitled to the right to take unpaid leave for a 12 week period for a "serious health condition." *King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999). In this case, the evidence was that with respect to the 15 day suspension, plaintiff was on leave pursuant to the FMLA, for which she was not receiving pay, and, during that leave, the DCFS suspended her FMLA leave for a period of 15 calendar days (not work days) and then, after that period had expired, her FMLA leave was resumed. Moreover, not only did plaintiff receive 12 weeks of unpaid FMLA leave after having received pay for her unused vacation and sick leave, but also received an additional 25 weeks of FMLA leave after her 15 day leave expired. Of course, in this case, she did not return to her position because she had been terminated for falsifying a report.

It is well settled that an employee can be disciplined while on FMLA leave. *Daugherty v. Wabash Center, Inc.,* 577 F.3d 747, 751 (7th Cir. 2009). *Simpson,* 559 F.3d at 712-13. Under the FMLA, an employee can substitute sick leave for unpaid leave, which plaintiff did under the

5

facts of this case, plaintiff simply has not established a violation of her rights under the FMLA or that she suffered any damages or loss for the actions taken by DCFS with respect to her 15 day suspension.

Accordingly, the Court **FINDS** that plaintiff has not established either race discrimination (Count I) or interference with FMLA leave (Count V). Accordingly, the Court **GRANTS** defendant's motion for judgment as a matter of law, Rule 50(a), and those counts will not be presented to the jury for deliberations.

**IT IS SO ORDERED.**

**DATE: February 10, 2010.**

                  **s/ WILLIAM D. STIEHL**
                    **DISTRICT JUDGE**